UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL ‘O’**

| | | | |
|---|---|---|---|
| Case No. | 8:26-cv-01450-CAS-DFMx | Date | November 9, 2026 |
| Title | Tokio Marine Specialty Insurance Company v. Allied World National Assurance Company et al | | |

Present: The Honorable CHRISTINA A. SNYDER

| Catherine Jeang | Amy Diaz | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| David Ezra | Kaitlin McGuire<br>Nicholas Lombard |

**Proceedings:** ZOOM HEARING RE: DEFENDANT’S NOTICE OF MOTION AND MOTION TO DISMISS CASE (Dkt. 20, filed October 12, 2026)

## I. INTRODUCTION

On June 5, 2026, plaintiff Tokio Marine Specialty Insurance Company (the “Plaintiff” or “Tokio Marine”) filed its complaint against Allied World National Assurance Company (the “Defendant” or “Allied World”) and Does 1 through 5, inclusive. Dkt. 1 (“Compl.”). Tokio Marine asserts six claims for relief against all defendants: (1) equitable subrogation; (2) bad faith refusal to settle; (3) bad faith interference with defense; (4) bad faith loss of and interference with settlement opportunity; (5) intentional interference with contract; and (6) interference with prospective economic advantage. Id.

On October 12, 2026, Allied World filed the instant motion to dismiss. Dkt. 20 (“Mot.”). On October 19, 2026, Tokio Marine filed an opposition. Dkt. 23 (“Opp.”). On October 26, 2026, Allied World filed a reply. Dkt. 25 (“Reply”).

On November 9, 2026, the Court held a hearing. Having carefully considered the parties’ arguments and submissions, the Court finds and concludes as follows.

## II. BACKGROUND

Plaintiff alleges the following in its complaint:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL 'O'**

| | | | |
|---|---|---|---|
| Case No. | 8:26-cv-01450-CAS-DFMx | Date | November 9, 2026 |
| Title | Tokio Marine Specialty Insurance Company v. Allied World National Assurance Company et al | | |

Plaintiff Tokio Marine Specialty Insurance ("Tokio Marine") is a Delaware corporation doing business in California. Compl. ¶ 2.

Defendant Allied World National Assurance Company ("Allied World") is a New Hampshire corporation doing business in California. Id. ¶ 3.

Does 1 through 5 are in some way responsible for Allied World's misconduct or the mishandling of claims under the insurance policies covering La Habra Associates, LLC ("La Habra"). Id. ¶ 6.

In August 2022, a pedestrian named Marta Bernal ("Bernal") was hit by an inattentive driver while on the grounds of the La Habra Marketplace shopping center located in La Habra, California. Id. ¶¶ 7-8. In 2023, Bernal filed suit in Orange County Superior Court (the "Bernal Litigation"), seeking "a multi-million dollar recovery" for her injuries against the following defendants: (1) the driver who hit her, Janelle Figueroa ("Figueroa"); (2) the store she walked out of immediately before she was hit, Ross Dress for Less, Inc. ("Ross"); (3) the property management firm overseeing the operation of the shopping center, DJM Capital Partners, Inc. ("DJM"); and (4) the shopping center property owner, La Habra. Id. ¶¶ 7-8, 12.

Tokio Marine and Allied World were two of the six insurers involved in resolving the Bernal litigation on behalf of Ross, DJM, and La Habra (collectively, the "Shopping Center Defendants"). Id. ¶ 9. The liability insurance tower (the "Insurance Tower" or the "Tower") covering La Habra included the following:

| INSURER | ATTACHMENT POINT | POLICY LIMIT |
|---|---|---|
| SOMPO | $38,000,000 | $12,500,000 |
| EVEREST | $26,000,000 | $12,000,000 |
| TOKIO MARINE | $16,000,000 | $10,000,000 |
| ALLIED WORLD | $6,000,000 | $10,000,000 |
| ASCOT | $1,000,000 | $5,000,000 |
| COLONY | $0 | $1,000,000 |

Id. Starting from the bottom ("primary") level and moving upward, the insurance tower represents the order in which the various policies and their limits could be invoked and made available to the shopping center defendants for the purpose of satisfying a damages award and settling Bernal's claim. Id. ¶ 10. The coverage amounts represent the maximum amount a given insurer would contribute to a damages award or settlement offer before the next level insurer's responsibilities kicked in. Id. Because Tokio Marine is fourth in the tower, its policy limits of $10 million would be unavailable to the shopping center defendants until Allied World's (third in the tower) $10 million policy limits were exhausted. Id. ¶ 11.

After the Bernal litigation was filed, Colony, the lowest level insurer in the insurance tower, retained Bremer Whyte Brown & O'Meara, LLP ("Bremer") to represent La Habra and Ross at trial if the case did not settle. Id. ¶ 12. Trial was set for November 17, 2025. Id.

Until mid-October 2025, the shopping center defendants, defense counsel, and the entire insurance tower were united in their view of and trial strategy for the Bernal litigation. See id. ¶ 14. Specifically, the shopping center defendants believed (1) the conditions of the shopping center and its parking lot were not the cause of the accident, and (2) fault rested with the distracted driver, Figueroa, who had been caught on video looking down at her radio when she drove her vehicle into Bernal. Id. However, the shopping center defendants understood that Bernal's attorneys intended to argue that the layout of the shopping center was also a cause of the accident, and they preferred to reach a reasonable settlement as compared to the risks of trial. Id. ¶ 15.

On or around October 24, 2025, Bernal's attorneys presented Bernal's $22,000,000 life care plan, designed to cover Bernal's need for ongoing medical treatment and 24-hour care for the rest of her life. Id. ¶ 16. This plan raised the projected settlement range up to as much as $20,000,000, implicating the full amount of Allied World's policy limit. Id. ¶ 16.

On October 31, 2025, a mediation occurred. Id. ¶ 17. Allied World did not have an adjuster meaningfully participate, "electing, instead, to abruptly terminate participation due to purported childcare obligations, and instead rely on an outside coverage attorney who had no settlement authority." Id. While Colony and Ascot made their full policy limits available, Allied World refused to make any part of its

$10,000,000 policy limit available for settlement purposes. Id. Allied World's conduct "stymied settlement discussions." Id. ¶ 19.

On November 5, 2025, La Habra's "person most qualified" was deposed. Id. ¶ 19. That deposition would not have occurred if Allied World had been prepared to negotiate in good faith in October. See id. Some of the deposition testimony caused Bernal's attorneys to focus entirely on La Habra. See id. On November 10, 2025, Bernal dismissed defendants Ross and DJM with prejudice, leaving La Habra as the sole defendant with "deep pocket[s]." See id.

On November 12, 2025—five days before trial—in an all-carrier conference call, Allied World announced a "drastic change in strategy." Id. ¶ 21. Now that Ross was no longer a party to the Bernal litigation, Allied World sought to "shift its responsibility to Ross and avoid paying all or part of [Allied World's] $10,000,000 policy limit," reasoning that "if Ross could be implicated, Ross's insurer might be forced to step in and contribute to settlement." Id. ¶¶ 22-23. However, because the accident underlying the Bernal litigation occurred in a "common area," La Habra's lease with Ross required La Habra to indemnify Ross for liability arising from events occurring in the common areas. Id. ¶ 23. Accordingly, the same law firm that was defending La Habra had been defending Ross. Id.

Allied World announced that it has conflicted out La Habra's trial counsel, Bremer, due to the firm's joint representation of La Habra and Ross. Id. ¶ 38. This conflict arose from Allied World's "insistence" that Ross would need to appear on the verdict form in order for La Habra to recover from Ross. Id. ¶ 38. Allied World sought to replace Bremer with a new attorney of Allied World's choosing. Id. ¶¶ 21, 24. Allied World also sought a continuance of trial. See id. ¶ 21.

The new defense attorney's defense objective, as unilaterally ordered by Allied World, would be to argue that (1) the shopping center parking lot was dangerous for pedestrians due to speeding drivers, (2) Ross knew of this danger, (3) Ross was obligated to disclose the perceived danger to La Habra, and (4) Ross failed to do so. See id. ¶¶ 28, 31. However, the lease agreement between Ross and La Habra merely asked Ross to advise La Habra when an accident had occurred in the common area so that La Habra had notice of the possibility it would be called upon to indemnify Ross. Id. ¶ 31. Accordingly, Allied World's strategy relied on an incorrect lease interpretation. Id. ¶ 32.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL ‘O’**

| | | | |
|---|---|---|---|
| Case No. | 8:26-cv-01450-CAS-DFMx | Date | November 9, 2026 |
| Title | Tokio Marine Specialty Insurance Company v. Allied World National Assurance Company et al | | |

Moreover, the strategy would require that La Habra “embrace the false theory that the shopping center was a dangerous place for pedestrians” and “shift the focus away from the fact that Figueroa’s attention was concentrated on her radio when she drove into Bernal.” Id. ¶ 33. Finally, Tokio Marine’s attorney questioned whether and how Allied World would be able to meet La Habra’s burden of showing “substantial evidence of fault” to add Ross to the verdict form under California law. Id. ¶ 49.

On November 13, 2025, Tokio Marine’s attorneys wrote to Allied World’s attorney, asking Allied World to offer at least $4 million of its limits to re-open settlement discussions with plaintiff. Id. ¶ 41.

On November 13, after La Habra’s new counsel was formally substituted into the Bernal litigation, the trial judge in the Bernal litigation vacated La Habra’s motion to continue trial. See id. ¶ 42. Accordingly, the new attorney “would be starting trial after being involved in the defense of the case for all of about four days.” Id. ¶ 28. The same day, Allied World “first offered money”—$1 million—“toward settlement.” Id. ¶¶ 43-44.

On November 15, 2025, Tokio Marine’s attorneys sent another letter to Allied World, describing “some of Allied World’s misconduct.” Id. ¶ 44.

On November 15, 2025, Allied World offered the remaining $9 million on its policy limit. Id. ¶ 54. However, “the settlement value of the case . . . significantly escalate[d] from the previous $16 to $20 million range, into the $25 million plus range.” Id. ¶ 29. After Bernal did not accept Allied World’s settlement offer, “Allied World immediately called on Tokio Marine to try to clean up the mess it had made.” See id.

Allied World’s failure to reasonably settle the Bernal litigation and its interference with La Habra’s defense “inflated the price of settlement by many millions of dollars.” Id. ¶ 56. Accordingly, Tokio Marine “had to pay amounts over and above Allied World’s policy limits and in excess of a reasonable settlement value ($6 to $10 million).” Id. ¶ 63. Moreover, La Habra and Tokio Marine

> have incurred and will incur legal fees and expenses to compel Allied World to pay the amounts it became legally obligated to pay when its impairment of the defense, refusal to promptly settle, and risky trial strategy caused the

> ultimate Bernal settlement to be at least $6,000,000 more than it would have been if Allied World had acted reasonably and in good faith.

Id. ¶ 63.

## III. LEGAL STANDARD

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL ‘O’**

| | | | |
|---|---|---|---|
| Case No. | 8:26-cv-01450-CAS-DFMx | Date | November 9, 2026 |
| Title | Tokio Marine Specialty Insurance Company v. Allied World National Assurance Company et al | | |

As a general rule, leave to amend a complaint that has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when “the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.” Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).

## IV. DISCUSSION

### A. Equitable Subrogation

Allied World argues that because California law provides no direct duty running from a liability insurer to an excess insurer to settle a claim against their common insured, any remedy available to Tokio Marine is derivative of the insured’s claim against Allied World. See Mot. at 6. Allied World argues that Tokio Marine merely “recites the[] elements” of an equitable subrogation claim. Id. at 7. Allied World also argues that Tokio Marine’s equitable subrogation claim “rises or falls with the bad-faith claims.” Id.

In opposition, Tokio Marine argues that it “not only has its own equitable subrogation rights, but also La Habra’s assigned bad faith rights as against Allied World.” Opp. at 4.

“The aim of equitable subrogation is to place the burden for a loss on the party ultimately liable or responsible for it and by whom it should have been discharged, and to relieve entirely the insurer or surety who indemnified the loss and who in equity was not primarily liable therefor.” Fireman's Fund Ins. Co. v. Maryland Cas. Co., 65 Cal. App. 4th 1279, 1296 (1998). “The right of subrogation is purely derivative.” Id. at 1292. “An insurer entitled to subrogation is in the same position as an assignee of the insured's claim, and succeeds only to the rights of the insured.” Id.

Under California law, the elements of an insurer’s equitable subrogation claim are: (1) the insured suffered a loss for which the defendant is liable; (2) the claimed loss is one for which the insurer was not primarily liable; (3) the insurer compensated the insured in whole or in part for the same loss for which the defendant is primarily liable; (4) the insurer has paid the claim of the insured to protect its own interest and not as a volunteer; (5) the insured has an existing, assignable cause of action against the defendant; (6) the insurer suffered damages caused by the act or omission on which the defendant’s liability depends; (7) justice requires that the loss be entirely shifted from the

insurer to the defendant, whose equitable position is inferior; and (8) the insurer's damages are liquidated. Id.

The Court finds that Tokio Marine has adequately pled facts to state a plausible equitable subrogation claim. Tokio Marine alleges that it paid $10,000,000 to settle the Bernal litigation on behalf of La Habra and that La Habra has assigned its cause of action to Tokio Marine. Compl. ¶¶ 59, 62. Tokio Marine alleges facts throughout the complaint to support the proposition that Allied World's wrongful acts and omissions gave rise to Tokio Marine's losses. See, e.g., id. ¶¶ 62, 66-57. Moreover, as discussed below, Tokio Marine's bad faith claims survive this motion to dismiss.

Accordingly, the Court DENIES Allied World's motion to dismiss Tokio Marine's first claim for relief.

**B. Bad Faith Claims**

Allied World argues that Tokio Marine sets forth "overlapping theories of bad faith." Mot. at 7. Allied World argues that Tokio Marine's second and fourth claims, which concern Allied World's alleged bad faith refusal to settle, "*require* proof that the underlying insurer passed on an actionable opportunity to resolve the insured's liability within the underlying insurer's limits." Id. at 8 (emphasis in original). Allied World argues that "Tokio Marine alleges no settlement offer within Allied World's layer—no proposal to release La Habra for $16 million or less," nor does it allege any "settlement demand of any kind, at any time." Id. at 8. Allied World further argues that none of the "narrow exceptions" to this rule under California law apply. Id. at 8.

Allied World also contends that Tokio Marine's three bad faith claims cannot rest on allegations about Allied World's conduct between mediation and its November 13, 2025 offer because the complaint "alleges no settlement opportunity" during that time, let alone one below Tokio Marine's insurance layer. See id. at 8-9. Instead, Allied World contends that Tokio Marine's allegations reflect that "Allied World attended the mediation, offered its full limits before trial, and that the case settled." Id. at 8. Allied World further argues that it had no duty to initiate settlement discussions. Id.

In opposition, Tokio Marine argues that under California law, "an offer within limits is NOT required for bad faith, failure to settle liability." Opp. at 5. Instead, evidence that the defendant "actively foreclosed the possibility of settlement" is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL ‘O’**

| Case No. | 8:26-cv-01450-CAS-DFMx | Date | November 9, 2026 |
|---|---|---|---|
| Title | Tokio Marine Specialty Insurance Company v. Allied World National Assurance Company et al | | |

sufficient. Id. (quoting Reid v. Mercury Ins. Co., 220 Cal. App. 4th 262, 272 (2013)). Tokio Marine argues that Allied World “affirmatively blocked settlement opportunities by, among other things,” failing to adequately prepare for or participate in the October 31, 2025 mediation and failing to make a settlement offer until it was “too late.” Id. Tokio Marine concedes that “it is technically accurate that Allied World offers its limits” shortly before trial and “it is technically accurate to say the case settled,” but such allegations do not preclude a finding that Allied World unreasonably delayed settlement and unreasonably installed a new attorney in bad faith. Id. at 5-8.

Tokio Marine further argues that “an excess judgment is not required for an excess carrier to establish bad faith against a primary insurer who failed to reasonably settle the case within its primary policy’s limits.” Id. at 7. Tokio Marine also contends that its bad faith claims are not duplicative, because the second cause of action alleges that Allied World “acted in bad faith by unreasonably delaying negotiation and offers until it was too late,” whereas the fourth cause of action “acted in bad faith by affirmatively interfer[ing] with La Habra’s ability to settle favorably by fixating on its own interests in avoiding a payout” by replacing trial counsel shortly before trial. See id. at 9.

In reply, Allied World makes several arguments.[1] First, Allied World argues that the opposition’s proposition that “an excess judgment is not required for an excess carrier

[1] Allied World’s reply argues that the opposition sets forth and relies on facts that are not alleged in Tokio Marine’s complaint, including: (1) Bernal’s request of at least $15 million to settle; (2) a November 14, 2025 email; (3) an alleged business relationship between Allied World and the new counsel hired to represent La Habra prior to trial; (4) the expected testimony of Bernal’s counsel; (5) a cooperation clause in La Habra’s policy with Tokio Marine; (6) Tokio Marine’s “prospective contract” to settle with Bernal; and (7) Allied World’s knowledge that the removal of La Habra’s initial defense team “violated California law.” See Reply at 3-4. To the extent that these facts are not supported by the allegations in Tokio Marine’s complaint, the Court does not consider them in ruling on the merits of Allied World’s motion to dismiss. “In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.” Broam v. Bogan, 320 F.3d 1023, 1026 (9th Cir. 2003) (quoting Schneider v. Cal. Dep't. of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998)) (emphasis in original).

to establish bad faith" is inapposite, as "Allied World never argued otherwise." Reply at 5. Allied World distinguishes Tokio Marine's cited authority on this point by arguing that each case "presupposes what the [c]omplaint does not allege: a settlement opportunity within limits that Allied World unreasonably refused or avoided." Id. Second, Allied World argues that the Reid exception does not apply because the complaint alleges that "Allied World remained engaged right up until the case settled" and "*the case did settle*." Id. at 6 (emphasis in original). Allied World argues that this alleged conduct reflects that Allied World did not "actively foreclose[]" settlement. Id. Moreover, Allied World argues that Tokio Marine "alleges no facts showing that Allied World knew—or that *anyone* knew—that Bernal would accept any amount within Allied World's limits," making Tokio Marine's theory that Allied World "refus[ed] to negotiate when it knew the case might be settled within its $10,000,000 limits" speculative and implausible. See id. (emphasis in original).

Allied World also distinguishes Tokio Marine's remaining authorities. Allied World argues that Travelers Insurance Co. v. Lesher, 187 Cal. App. 3d 169 (1986), concerns "a defending insurer's duties *to its own insured*" under the insurer's duty to defend. Id. at 7-8. Allied World argues that here, by Tokio Marine's own admission, "Allied World was not La Habra's defending insurer." Id. at 8 (citing Compl. ¶¶ 12, 22). Moreover, the court in Lesher did not consider whether the substitution of counsel, "without more, supports liability for an 'inflated settlement,'" as Tokio Marine contends. Id. at 9. Allied World argues that the insurer in Lesher did not contend there was no liability at all, so the court did not decide that question. Id. Allied World also argues that Tokio Marine's appeals to Highlands Insurance Co. v. Continental Casualty Co., 64 F.3d 514, 518 (9th Cir. 1995), and Barickman v. Mercury Casualty Co., 2 Cal. App. 5th 508, 520 (2016), are unpersuasive because "[n]either case holds that settlement strategy, untethered to any alleged settlement opportunity, states a claim." Id. Finally, Allied

---

However, "[f]acts raised for the first time in plaintiff's opposition papers should be considered by the court in determining whether to grant leave to amend or to dismiss the complaint with or without prejudice." Id. Accordingly, the Court may consider any facts raised for the first time in Tokio Marine's opposition when considering whether to grant leave to amend.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL 'O'**

| | | | |
|---|---|---|---|
| Case No. | 8:26-cv-01450-CAS-DFMx | Date | November 9, 2026 |
| Title | Tokio Marine Specialty Insurance Company v. Allied World National Assurance Company et al | | |

World disputes the relevance of Tokio Marine's efforts to distinguish Pinto v. Farmers Insurance Exchange, 61 Cal. App. 5th 676 (2021), on its facts.

Finally, Allied World contends that Tokio Marine's bad faith claims are duplicative because claims two and four allege the "same breach"—Allied World's failure to timely negotiate and offer settlement up to its policy limits—and the removal of defense counsel that Tokio Marine argues is the crux of its fourth claim is the "subject of" the third claim and is also "pleaded within" the second claim. Id. at 10. Allied World also argues that Tokio Marine's "causation and damages theory is rooted in speculation." Reply at 10.

"In each policy of liability insurance, California law implies a covenant of good faith and fair dealing." PPG Indus., Inc. v. Transamerica Ins. Co., 20 Cal. 4th 310, 312, 975 P.2d 652, 654 (1999). "This implied covenant obligates the insurance company, among other things, to make reasonable efforts to settle a third party's lawsuit against the insured." Id. "An insurer may be held liable for a judgment against the insured in excess of the policy limits when the insurer has breached its implied covenant of good faith and fair dealing by unreasonably refusing to accept a settlement offer within the policy limits." Highlands Ins. Co. v. Cont'l Cas. Co., 64 F.3d 514, 517 (9th Cir. 1995). "Similarly, an excess carrier may maintain an action against the primary carrier for unreasonable refusal to settle within the latter's policy limits." Id. The question of whether an insurer has acted in bad faith is typically a question of fact. Id.; see also Barickman v. Mercury Cas. Co., 2 Cal. App. 5th 508, 520-21 (2016) ("[A]s is true in many bad faith cases, the reasonableness of the insurer's claims-handling conduct was a question of fact to be resolved following a trial.").

As Allied World points out, "[n]othing in California law supports the proposition that bad faith liability for failure to settle may attach if an insurer fails to initiate settlement discussions, or offer its policy limits, as soon as an insured's liability in excess of policy limits has become clear." Reid v. Mercury Ins. Co., 220 Cal. App. 4th 262, 274 (2013), as modified on denial of reh'g (Nov. 6, 2013). However, a formal settlement offer is not necessary to maintain a bad faith claim. See id. at 273 (observing that some California courts of appeal have found that "an insurer may be liable for bad faith refusal to settle, without a formal settlement offer"). These cases "involve circumstances where the claimant has conveyed to the insurer an interest in settlement, and the insurer has rejected or ignored the opportunity to negotiate a settlement." Id. at 274. Accordingly, a

bad faith claim may arise "without a formal settlement offer, when a claimant clearly conveys to the insurer an interest in discussing settlement but the insurer ignores the opportunity to explore settlement possibilities to the insured's detriment." See id. at 278.

Allied World acknowledges that the "central point" of its motion to dismiss is that the complaint "alleges no settlement demand—of any kind, at any time." See Reply at 3. However, the Court finds that Tokio Marine has alleged facts that give rise to the reasonable inference that Bernal made a settlement offer prior to Allied World's alleged wrongful conduct in late October and November 2025. See Compl. ¶ 66 ("If Allied World had acted reasonably and in good faith, the case would have settled in October or early November for $16,000,000 to $20,000,000."); id. ¶ 27 (stating that if Allied World's litigation strategy failed, Allied World would "pay the $10,000,000 policy limit it should have paid to settle the case for $16,000,000 in October").

Even if these facts did not give rise to a reasonable inference of a formal settlement offer, Tokio Marine has adequately alleged that Bernal "clearly convey[ed]" an interest in settlement that Allied World ignored. See Reid, 220 Cal. App. 4th at 274. For example, Tokio Marine alleges that on or around October 24, 2025, "Bernal's attorneys presented plaintiff's $22,000,000 life care plan, designed to cover plaintiff's need for ongoing medical treatment and 24-hour care for the rest of her life." Compl. ¶ 16. Tokio Marine also alleges that mediation occurred on October 31, 2025. Id. ¶ 17. California courts have found that similar facts give rise to plausible allegations that an insurer "refused in bad faith a reasonable opportunity to settle." See Aspen Speciality Ins. Co. v. Willis Allen Real Est., No. 14CV105, 2015 WL 3765008, at *3 (S.D. Cal. June 15, 2015) (denying a motion to dismiss where the insurer was "warned" of the potential of above-policy limits damages prior to a mediation); cf. Travelers Indem. Co. of Connecticut v. Arch Specialty Ins. Co., No. 2:11-CV-1601, 2013 WL 6198966, at *11 (E.D. Cal. Nov. 27, 2013) (concluding that a reasonable jury could find that claimant's statement of the case's reasonable value "presented a reasonable opportunity to pursue settlement of the case and that [the insured's] failure to pursue settlement discussions at that point constituted bad faith").

To the extent that Tokio Marine's bad faith claims are duplicative, the Court declines to dismiss them at this early stage of the litigation. See Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."); Desoucy v. Cnty. of San Bernardino, No. EDCV 23-1287, 2025 WL

1111496, at *3 (C.D. Cal. Mar. 13, 2025) ("[A] claim that is duplicative or superfluous of other claims 'is not grounds for dismissal.'" (quoting Astiana v. Hain Celestial Group, Inc., 783 F.3d 753, 762-63 (9th Cir. 2015))).

Accordingly, the Court DENIES dismissal of Tokio Marine's second, third, and fourth claims for relief.

**C. Intentional Interference with Contractual Relations**

Allied World argues that Tokio Marine fails to allege a breach or actual disruption of Tokio Marine's policy with La Habra. Mot. at 10. Allied World contends that "[o]n the contrary, the [c]omplaint alleges that the policy was *performed*—i.e., Tokio Marine paid a portion of its limits to settle a covered claim against its insured." Mot. at 10 (emphasis in original). Moreover, any alleged "disruption" with respect to La Habra and Tokio Marine's ability to defend is insufficient because "the [c]omplaint does not allege that Tokio Marine's policy gave it any right or duty to control or fund that defense." Id. Allied World argues that Tokio Marine fails to plead the required intent, since the complaint "repeatedly alleges that Allied World's purpose was to reduce its *own* obligations—not to interfere with Tokio Marine's contract." Id. at 11 (emphasis in original). Allied World further argues that if its litigation strategy had been successful, "Tokio Marine would have paid nothing." Id. Finally, Allied World argues that this claim is "an attempt to impose on Allied World, under a tort label, the very direct settlement duty to excess insurers that California has refused to recognize." Id.

In opposition, Tokio Marine argues that all insurers in the insurance tower "had a right to count on a reasonable defense." Opp. at 10-11. Tokio Marine argues that "[a]lthough evidence need not be pleaded," Tokio Marine's policies "call[] for the insured's cooperation in mounting a defense" via a cooperation clause. See id. at 11. Tokio Marine argues that "[a]n excess insurer's cooperation clause is breached if a vigorous defense is not mounted." Id. at 11. Tokio Marine argues that because it was not La Habra but Allied World who "refuse[d] to cooperate with the defense efforts," Allied World directly interfered with the contract between Tokio Marine and La Habra. Id. at 12.

In reply, Allied World urges the Court to disregard the opposition's discussion of a cooperation clause, given that the complaint fails to allege any terms of Tokio Marine's

policy, let alone a cooperation clause. Reply at 4. Allied World also argues that the opposition "concedes that 'the insured did not refuse to cooperate with the defense efforts.'" Id. at 11 (quoting Opp. at 12). Moreover, Allied World argues that Tokio Marine has failed to identify a source giving rise to Tokio Marine's alleged "right to count on a reasonable defense." Id. Allied World otherwise largely reiterates its arguments. See id. at 12.

To prevail on a claim for intentional interference with contractual relations, the plaintiff must establish (1) the existence of a valid contract between the plaintiff and a third party, (2) the defendant's knowledge of the contract, (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship, (4) actual breach or disruption of the contractual relationship, and (5) damages. CRST Van Expedited, Inc. v. Werner Enters., Inc., 479 F.3d 1099, 1105 (9th Cir. 2007) (citing Quelimane Co. v. Stewart Title Guar. Co., 19 Cal. 4th 26, 55 (1998)).

The Court finds that Tokio Marine's claim fails on the third prong of this analysis. To meet the third prong's intent requirement, California law "does not require that the actor's primary purpose be disruption of the contract." Quelimane, 19 Cal. 4th at 56. Instead, defendant meets this requirement if he "knows the interference is certain or substantially certain to occur as a result of his action." See id. (quoting Restatement (2d) of Torts § 766 cmt. j). However,

> If the actor is . . . endeavoring to advance some interest of his own, the fact that he is aware that he will cause interference with the plaintiff's contract may be regarded as such a minor and incidental consequence and so far removed from the defendant's objective that as against the plaintiff *the interference may be found to be not improper*.

Croskey et al., Cal. Prac. Guide: Insurance Litig. § 11:138.1 (emphasis in original) (quoting Quelimane, 19 Cal. 4th at 56).

Here, Tokio Marine fails to plausibly allege that Allied World intended to interfere with Tokio Marine's contract with La Habra, nor does Tokio Marine plausibly allege that Allied World was certain or substantially certain that interference would result from Allied World's conduct. According to Tokio Marine, the alleged contractual interference disrupted Tokio Marine's entitlement to a "reasonable defense that would protect against

an inflated settlement that needlessly invaded its layer of coverage.” See Opp. at 10.[2] However, in its complaint, Tokio Marine repeatedly alleges that Allied World’s “objective” was to “avoid paying all or part of its $10,000,000 policy limit.” Compl. ¶ 22; see also id. ¶ 25 (“Allied World hoped to . . . create[e] a situation where Allied World would be able to avoid or reduce its own responsibility.”); id. ¶ 26 (“Allied World hoped that this strategy would save Allied World some, and possibly all, of its $10,000,000 policy limit.”). Tokio Marine also alleges that its own policy limits “would be unavailable to the shopping center defendants until Allied World’s . . . $10M policy limits were exhausted.” Id. ¶ 11. Taken together, these allegations reflect that “Tokio Marine would have paid nothing” if Allied World’s conduct had led to its intended result as alleged. See Mot. at 11. The Court does not see how these allegations could plausibly give rise to the inference that Allied World intended or was reasonably certain that its conduct would interfere with La Habra’s policy with Tokio Marine. Such an inference would be at odds with Tokio Marine’s repeated allegations with respect to Allied World’s objectives. See Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007) (“[U]nreasonable inferences . . . are insufficient to defeat a motion to dismiss.”).

Nor do other allegations in Tokio Marine’s complaint give rise to the inference of adequate intent. Tokio Marine’s allegations of Allied World’s “intentional acts designed to induce a breach and/or disrupt the contractual relationship between Tokio Marine and La Habra” and “acts that were substantially certain to result in the breach of, or disruption in, the contractual relationship between Tokio Marine and La Habra” are merely conclusory. See Compl. ¶ 80. Moreover, any suggestion within the complaint that Allied World *should have known* about the certainty of interference is inadequate. See Rosenthal & Rosenthal of California, Inc. v. Hilco Trading, LLC, No. 2:19-CV-10315, 2020 WL 12948055, at *5 (C.D. Cal. Dec. 29, 2020), aff'd, No. 21-55070, 2022 WL 18906 (9th Cir. Jan. 3, 2022) (“[T]he evidence must support a finding that the defendant actually knew that disruption or interference would result from his conduct . . . . evidence that the defendant *should* have known that disruption or interference would result from his conduct is insufficient.” (emphasis in original)).

[2] For the purposes of this motion, the Court assumes *arguendo* that this purported interference amounts to an adequate “breach or disruption” of contractual relations.

The Court therefore concludes that Tokio Marine has failed to allege facts that satisfy the intent requirement of its intentional interference with contractual relations claim. Accordingly, the Court GRANTS dismissal of Tokio Marine's fifth claim for relief.

### D. Interference with Prospective Economic Advantage

First, Allied World argues that Tokio Marine "identifies no constitutional provision, statute, regulation, or common-law standard that Allied World's alleged conduct violated" to satisfy California's requirement of an "independently wrongful act." Mot. at 12. Allied World argues that the only "wrong" alleged is "Allied World's alleged breach of the implied covenant owed to *La Habra*," and a breach of duty to a third party "cannot supply the independent wrong" that California law requires. Id. Second, Allied World argues that there is no alleged prospective economic advantage because "[a]voiding a payment obligation under one's own insurance policy is not a prospective economic advantage." Id. at 13. Third, Allied World argues that Tokio Marine's alternative allegation of negligent interference fails because there is no special relationship between the parties that could give rise to a viable claim to recover on a pure economic loss. Id.

In opposition, Tokio Marine argues that Allied World's "[i]nterference with the Tokio Marine-La Habra contract was independently wrongful, because it simultaneously breached the implied covenant of good faith and fair dealing Allied World had under its own separate contract with La Habra." Opp. at 12-13. Second, Tokio Marine argues that there is "no published decision that has held that 'prospective economic advantage' cannot be the avoidance of significant financial loss." Id. at 13. Tokio Marine further argues that "the actual loss was realized in the settlement agreement with Bernal—which was, at the time of the interference, a prospective contract." Id. Third, Tokio Marine argues that "under the CACI 2022 jury instruction, the jury in this case will be instructed that all the tort requires is a determination that Tokio Marine 'was harmed.'" Id. Tokio Marine contends that a jury "can easily find that having to pay $6,000,000 to $10,000,000 because Allied World's tortious conduct qualifies as harm." Id. (citation modified).

In reply, Allied World argues that "a breach of a duty owed to someone else—one the plaintiff can enforce only by standing in another's shoes—cannot supply the independent wrong" required by California law. Reply at 13. Allied World also argues

that “[t]he [o]pposition’s new theory—that the relevant relationship was the prospective ‘settlement agreement with Bernal’—is not pleaded.” Id. at 14 (citation modified). Allied World further argues that Tokio Marine’s appeals to the CACI instructions are inapposite because “[h]arm and expectancy are distinct elements, and Tokio Marine must plead both.” Id. at 14. Finally, Allied World argues that Tokio Marine’s failure to respond to Allied World’s argument about Tokio Marine’s alternative negligent interference theory amounts to a concession of the issue. Id. at 14 n.5.

“The tort of intentional interference with contract is closely related to the tort of intentional interference with prospective economic advantage; the two torts share almost all elements[.]” Transcription Commc'ns Corp. v. John Muir Health, No. C 08-4418, 2009 WL 666943, at *8 (N.D. Cal. Mar. 13, 2009).[3] As with claims of intentional interference with contractual relations, “a plaintiff may satisfy the intent requirement by pleading specific intent, i.e., that the defendant desired to interfere with the plaintiff's prospective economic advantage[, or] a plaintiff may alternately plead that the defendant knew that the interference was certain or substantially certain to occur as a result of its action.” Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1154 (2003). Accordingly, for the reasons stated above, the Court finds that Tokio Marine fails to allege a plausible claim of intentional interference with prospective economic advantage.

To the extent that Tokio Marine asserts a claim for negligent interference with prospective economic advantage, “negligence generally is *not* among the theories of recovery available against insurers.” Croskey et al., Cal. Prac. Guide: Insurance Litig. § 11:205 (emphasis in original). California courts have historically found that any duty owed from a primary insurer to an excess insurer derives from a theory of equitable subrogation, and not from “any separate duty owed to an excess insurance carrier.” See, e.g., Com. Union Assurance Companies v. Safeway Stores, Inc., 26 Cal. 3d 912, 917-18, 610 P.2d 1038 (1980); Fireman's Fund Ins. Co. v. Maryland Cas. Co., 21 Cal. App. 4th 1586, 1601 (1994). Moreover, at least one court in the Ninth Circuit has applied

[3] Unlike claims of intentional interference with contractual relations, “a plaintiff must plead that the defendant engaged in an independently wrongful act” to state a claim of intentional interference with prospective economic advantage. See Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1158 (2003) (citing Della Penna v. Toyota Motor Sales, U.S.A., Inc., 11 Cal. 4th 376, 393, 902 P.2d 740 (1995)).

California law to dismiss an excess insurer's negligence claim against a primary insurer for lack of duty. See Arch, 2011 WL 6328286, at *3-6 (dismissing a negligence claim "because it finds that under both California and Oregon law, Travelers' duty to Arch is a duty that arises from equitable subrogation and not from a direct duty" and observing that the parties "agree that under California law, Arch does not have a direct cause of action in its own right against Travelers for breach of the duty of care"). Though the instant action involves two excess insurers, rather than a primary insurer and an excess insurer, the Court finds this authority instructive. Moreover, Tokio Marine failed to offer any arguments in support of a direct duty of care between Allied World and Tokio Marine. See Opp. Accordingly, the Court GRANTS dismissal of Tokio Marine's sixth claim for relief.

### E. Punitive Damages and Brandt Fees

Allied World argues that Tokio Marine may not recover punitive damages because (1) punitive damages are not assignable with respect to Tokio Marine's derivative claims; (2) equitable subrogation is not "a vehicle for punitive recovery;" and (3) plaintiff's direct claims fail to state a claim. Mot. at 14. Allied World also contends that even if Tokio Marine could recover punitive damages, its allegations of malice are conclusory. Id. at 14-15.

Allied World also argues that Tokio Marine may not collect attorneys' fees pursuant to Brandt v. Superior Court, 37 Cal. 3d 813, 817 (1985). Id. at 15. Allied World argues that Brandt only permits "*an insured* to recover" attorneys' fees it reasonably incurs to compel an insurer to pay wrongfully withheld policy benefits. Id. Allied World argues that "[a]t most, Tokio Marine could recover the fees incurred to obtain policy benefits—not the fees incurred to pursue the tort recovery it now seeks." Id.

In opposition, Tokio Marine states that it "not seeking punitive damages under its equitable subrogation and bad faith claims." Opp. at 15. Tokio Marine further argues that it is entitled to seek punitive damages under its intentional interference with contractual relations and interference with prospective economic advantage claims. Id. at 15-16.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL** **'O'**

| | | | |
|---|---|---|---|
| Case No. | 8:26-cv-01450-CAS-DFMx | Date | November 9, 2026 |
| Title | Tokio Marine Specialty Insurance Company v. Allied World National Assurance Company et al | | |

Tokio Marine also argues that it may recover Brandt fees under Simone v. State Farm Mut. Auto. Ins. Co., 2025 Cal. App. Unpub. LEXIS 8124 (Cal. Ct. App. Dec. 17, 2025), which held that "fees and expenses incurred to recover money above the policy limits of a liability insurer that unreasonably squanders settlement opportunities *are* recoverable Brandt fees." Id. at 14 (emphasis in original). Tokio Marine argues that because La Habra assigned its rights to Tokio Marine, it is not precluded from recovering its attorneys' fees incurred in this lawsuit under Brandt. Id. at 15.

In reply, Allied World argues that Tokio Marine's arguments with respect to punitive damages fail, both on the merits of claims five and six and also because Tokio Marine's cited authorities "highlight the absence of any allegation of malice in the Complaint needed to support a claim for punitive damages." Reply at 14-15. Allied World further argues that "a complaint alleging that an insurer pursued an aggressive strategy to reduce exposure and then tendered its full limits before trial does not plausibly allege despicable conduct." Id. at 15 (citation modified).

With respect to Brandt fees, Allied World argues that the opposition "clarifies that what Tokio Marine actually seeks is 'its attorney's fees incurred in this lawsuit' . . . . Those are fees 'attributable to the bringing of the bad faith action itself,' which Brandt does not permit." Id. at 15-16. Allied World argues that the Court need not rely on Simone, given that (1) it is an unpublished state appellate court opinion and (2) its reasoning is "irreconcilable with controlling California Supreme Court case law." Id. at 16.

Tokio Marine concedes that it does not request punitive damages with respect to its equitable subrogation and bad faith claims, and the Court now dismisses Tokio Marine's remaining tort claims. Accordingly, the Court DENIES as moot Allied World's motion to dismiss Tokio Marine's request for punitive damages. With respect to Tokio Marine's request for Brandt fees, the Court reserves judgment at this stage of the litigation.

**F. Leave to Amend**

Allied World argues that leave to amend should be denied because the defects in Tokio Marine's third, fourth, fifth, and sixth claims are "legal, not factual," and because Tokio Marine's first two claims fail given Tokio Marine's failure to allege a settlement opportunity, demand, final amount, or its actual payment. Mot. at 16.

In opposition, Tokio Marine requests leave to amend. Opp. at 17.

In reply, Allied World largely reiterates its earlier arguments. See Reply at 17-18.

Although it appears that leave to amend would be futile as to certain of Tokio Marine's claims, the Court GRANTS Tokio Marine fourteen (14) days leave to amend to reassert its claims, if appropriate.

## V. CONCLUSION

In light of the foregoing, the Court hereby **DENIES** Allied World's motion to dismiss Tokio Marine's first claim for equitable subrogation.

The Court **DENIES** Allied World's motion to dismiss Tokio Marine's second, third, and fourth claims for bad faith.

The Court **GRANTS** Allied World's motion to dismiss Tokio Marine's fifth claim for intentional interference with contractual relations.

The Court **GRANTS** Allied World's motion to dismiss Tokio Marine's sixth claim for interference with prospective economic advantage.

The Court **DENIES** as moot Allied World's motion to dismiss Tokio Marine's claims to the extent that they seek punitive damages. The Court reserves judgment with respect to Allied World's motion to dismiss Tokio Marine's claims to the extent they seek Brandt fees.

In the event that Tokio Marine chooses to amend its pleadings, Tokio Marine's first amended complaint is due within fourteen (14) days of the date of this order.

IT IS SO ORDERED.

| | 00 : 24 |
|---|---|
| Initials of Preparer | CMJ |